[Civ. No. 3020.   Third Appellate District.—July 15, 1927.]

MRS. LAURA RIDDLE, Respondent, v. C. W. ETLING, Appellant.

W. E. Davies for Appellant.

A. H. Hewitt and Loyd E. Hewitt for Respondent.

FINCH, P. J.—This is an action to foreclose a chattel mortgage given by defendant to plaintiff on a crop of barley and an automobile to secure the payment of a promissory note for $1,000. Plaintiff was given judgment for $300 and interest and also the sum of $100 as attorney fees, and the automobile was ordered sold to satisfy the judgment. The defendant has appealed. The court found:

"That the crop of barley . . . was sold by the defendant for the sum of $1,922.35, and defendant paid to plaintiff the sum of $1,722.35 from the proceeds of said sale.

"That at the time said plaintiff received said sum defendant was owing plaintiff, and there was due and payable from defendant to plaintiff, in addition to the amount due on the promissory note set forth in said complaint, the sum of $1,113, which said sum represents money borrowed from said plaintiff by defendant, money paid by plaintiff for defendant at his request and wages due plaintiff from the defendant.

"That at the time said defendant paid the plaintiff the sum of $1,722.35, plaintiff and defendant had no accounting between themselves, and neither of them knew to a certainty how the account stood.

"That from said sum of $1,722.35, plaintiff immediately on receipt of the same applied the sum of $735 to the payment of the amount due on said note, $700 of which was applied in payment on the principal thereof, and $35 thereof was applied by her to the payment of interest accrued on said note to the 27th day of August, 1924, and she applied the balance thereof, the sum of $987.35, on the amount due her from the defendant in addition to the amount represented by the promissory note, to-wit: the sum of $1,113.

"Defendant, at no time prior to the time she made application of said money as above set forth directed plaintiff to apply all of the said sum of $1,722.35, or any part thereof, to the payment of said note or interest thereon. . . . The said sum was given to plaintiff in two installments. The payment or installment of $501 on the 12th day of August, 1924, and the other installment of $1,221.35 on the 18th of August, 1924.

"That there is now due and unpaid from the defendant to plaintiff on account of the principal of the promissory note set forth in the complaint herein, the full sum of $300, together with interest thereon from the 27th day of August, 1924, at the rate of seven per cent per annum. And also the sum of $1,256.65 as balance due on unsecured indebtedness of defendant to plaintiff, which said sum of $1,256.65 the plaintiff waives."

█ Appellant contends that the evidence is insufficient to support the finding that the unsecured indebtedness of defendant to plaintiff was the sum of $1,113. Plaintiff testified to items of indebtedness aggregating a greater sum than that found by the court. Such testimony is sufficient to support the finding, even though some of the items were disputed by defendant. Appellant tabulates the items of indebtedness testified to by the plaintiff as involved in the account and then attempts to show that she testified to payments aggregating a greater sum. He entirely ignores, however, her testimony to the effect that some of these payments were made upon debts of previous years, which did not enter into the accounting at all. In his tabulation he credits the defendant with a payment of $650, but omits to charge him with $600 loaned to him by the plaintiff and in satisfaction of which the payment of $650 was made.

The finding that the balance of the unsecured indebtedness of defendant to plaintiff was $1,256.65 is clearly a clerical-error. A mere computation from the specific facts found shows that such balance was $125.65. That finding is wholly immaterial except for the purpose of showing that the plaintiff had not applied a greater sum upon the unsecured indebtedness than was due her thereon.

█ Appellant's main contention is that because the payments made to the plaintiff were the proceeds of the sale of a part of the mortgaged property it was her duty, without

direction by defendant, to apply the same first to the satisfaction of the note secured by the mortgage. The following testimony stands uncontradicted: "In the summer of 1924, the crop was harvested by the defendant and instead of being turned over to the plaintiff was retained in possession of defendant until sold by him, without the knowledge of the plaintiff. The first installment of the barley was sold by defendant and after this sale he paid the plaintiff $500, . . . and subsequently and before August 13, 1924, defendant sold the remainder of the barley without the knowledge or consent of the mortgagee, and on August 13th, defendant handed plaintiff a check for $1,221.35, the proceeds of the second installment of the barley." Plaintiff testified that the defendant told her to apply the amount of the check first on the unsecured indebtedness and the remainder on the mortgage note. The defendant denied this and testified that "the check for $1,221.35 was delivered with the intention of having it applied to the payment of the mortgage."

It is clear that the defendant made an unauthorized sale of the barley. Whether or not such wrongful sale had the effect of extinguishing the lien of the mortgage on the barley depends upon circumstances not shown by the record. (*Crosby* v. *Fresno Fruit Growers' Co.,* 30 Cal. App. 308 [158 Pac. 1070].) ▮ In any view of the case, out of the several remedies opened to the plaintiff by the unauthorized sale, she was not required to bring an action for the recovery of the property. When the proceeds of the sale came into the hands of the defendant it was within his power to appropriate the same to any purpose of his own choosing. ▮ While, depending upon the circumstances, the lien of the mortgage may have continued on the barley, the plaintiff had no lien upon the money in defendant's hands which was paid for the barley. ▮ If the plaintiff had authorized or ratified the sale made by the defendant, the result would be the same. The lien on the barley in that case would be extinguished and would not be transferred to the proceeds in the hands of the defendant. (*Maier* v. *Freeman,* 112 Cal. 8 [53 Am. St. Rep. 151, 44 Pac. 357].) The defendant having failed to direct the application of the payments to any particular debt, no more reason appears for requiring the application thereof to the mortgage debt than if the moneys had been derived

from a different source. In case of foreclosure or sale by the mortgagee under authority given him by the mortgage, it has been held uniformly that the proceeds of the sale must be applied first to the mortgage debt. The decisions are in conflict as to the rule applicable to payments made by the mortgagor out of moneys derived from his sale of the mortgaged property when he does not direct the application thereof. The decisions holding in accordance with appellant's contention do not consider whether there is a distinction to be made between such a case and one where the sale is involuntary as to the mortgagor, as upon foreclosure or sale by the mortgagee. Such a distinction is clearly pointed out and what appears to be the logical rule is stated in *Cain* v. *Vogt,* 138 Iowa, 631 [128 Am. St. Rep. 216, 116 N. W. 786], where it is said: "Of course, if the creditor forecloses his mortgage, the proceeds of the sale will be applied upon the debt thereby secured, because the very purpose of the foreclosure is to convert the security into money for the payment of that specific debt. But if the mortgagor voluntarily sells the property, and turns the money thus realized over to the creditor without direction for its application, the right of the latter to apply it to the unsecured debt is, in our judgment, a logical deduction from the proposition of law to which we have already given our adhesion. The books are not wanting in authority bearing upon the point here presented. . . . Rules which bind the mortgagee who sells upon foreclosure, or takes possession of and sells and converts the security, have little application to a case where the payment is made from money obtained by a voluntary sale by the mortgagor. In the latter case the lien of the mortgage does not follow or attach to the money, and the mortgagee has no recourse upon any other person to whom such moneys have been paid. In the hands of the mortgagor they have no different character than moneys derived from a wholly different source; and when paid over to the mortgagee in the absence of agreement or direction as to their application, the latter has the right to credit them upon the unsecured debt without regard to the source from which they were obtained by the debtor."

The judgment is affirmed.

Plummer, J., and Glenn, J., *pro tem.,* concurred.