[Civ. No. 837. Fourth Appellate District.—March 22, 1933.]

P. B. HABER, Appellant, v. J. G. BOSWELL COMPANY (a Corporation), Respondent.

H. A. Savage for Appellant.

Sidney J. W. Sharp and M. Wingrove for Respondent.

CAMPBELL, J., *pro tem.*—A general and special demurrer to plaintiff's complaint was interposed by defendants. It was sustained without leave to amend as to defendant and respondent J. G. Boswell Company, a corporation, and sustained with leave to amend as to defendants E. W. Sanders and Mrs. E. W. Sanders, within fifteen days after the notice of the ruling. From the judgment of dismissal in favor of said J. G. Boswell Company, a corporation, following the order sustaining its demurrer, this appeal has been taken.

The part of the complaint material to this appeal, after alleging that the J. G. Boswell Company is a corporation, proceeds that plaintiff and defendant, E. W. Sanders, entered into a lease for 320 acres of cotton land, and

"II. That on or about the 1st day of February, 1929, plaintiff and defendant, E. W. Sanders, entered into a certain written lease, a copy of which lease is attached hereto and made a part hereof and marked Exhibit 'A'. . . . That said lease was drawn by J. G. Boswell Company, and said J. G. Boswell Company knew at all times herein mentioned, the

'contents of said lease, and knew plaintiff's rent had not been paid and knew plaintiff had an equitable lien on the crop of cotton growing during the year 1929 on said leased land as security for the rent under said lease. . . .

" 'The balance of said rental shall be payable to the Lessor immediately upon the harvesting and removal of the cotton crop by the Lessee. And for the purpose of securing the payment of said balance, the Lessee covenants and agrees that on or before April 1st, 1929, he will make, execute and deliver to the Lessor a second mortgage on said cotton crop; it being expressly understood and agreed between the parties hereto that the Lessee contemplates and shall have the right to make a first crop mortgage thereon with J. G. Boswell Company for the purpose of financing his farming operations under this lease.'

"That said defendant E. W. Sanders stated that he would execute the crop mortgage referred to in said lease, however, never would and never did execute the same."

The record discloses that appellant did not apply to the lower court for permission to amend his complaint. The only question, therefore, for this court to determine is whether or not the demurrer of the respondent was for any reason properly sustained. (*Murphy* v. *Murphy*, 57 Cal. App. 182 [207 Pac. 43]; *Bailey Trading Co.* v. *Levy*, 72 Cal. App. 339 [237 Pac. 408]; *Thomson* v. *Mortgage Investment Co.*, 99 Cal. App. 205 [278 Pac. 468].) (1) In the first place there is no allegation in the complaint of any facts or circumstances which would show or tend to show some duty or obligation upon respondent to withhold sufficient of the crop proceeds to satisfy the alleged claim. (2) There is no allegation in the complaint that appellant did not consent to the removal of the crops. (3) There is no allegation in the complaint that the removal of the crops was tortious. (4) The complaint is lacking in allegation either that the cotton was removed or sold or that the proceeds thereof were paid to defendant Sanders against the protest or over the objections of appellant. It is quite clear from the allegation of the complaint that appellant made no move whatsoever to prevent any of these things being done, and even now he is not seeking to prevent the removal and sale of the cotton unharvested at the time of the commencement of his action, or impress a lien upon said cotton. The

allegation of the complaint is susceptible of but two interpretations—either that appellant stood passively by with full knowledge of the disposition being made of the cotton and the proceeds, or that appellant consented to such disposition in reliance upon Sanders' promise to pay the rental out of the proceeds. In either case the result would be the same. The lien of the alleged equitable mortgage was lost upon the removal and sale of the cotton and did not attach to the proceeds. Section 2872 of the Civil Code defines a lien as follows: "A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act."

Section 2972 of the Civil Code provides that: "The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of the mortgagor."

In construing the code section last above cited, it has been held that the lien of the mortgage is *prima facie* extinguished by the removal of the crop from the premises of the mortgagor. This is a general rule and it devolves upon one claiming otherwise to overcome this *prima facie* case by showing that his case is an exception. In the case of *Horgan* v. *Zanetta,* 107 Cal. 27 [40 Pac. 22, 24], the court said: "It does not appear that the mortgagee used any care or diligence in looking after the crop when harvested, or paid any attention to the grain until after it had been attached, which was about a month and a half after Murphy commenced to harvest it, and nearly a month after he had removed it from the land. We think that under these facts Cole was not estopped from denying the continuance of the mortgage lien, and that at the time of the attachment the said lien had been extinguished by the removal of the grain from the land of the mortgagor on which it was raised."

The case of *Gates* v. *Tom Quong,* 3 Cal. App. 443 [85 Pac. 662], is also authority for the general rule of law that the lien of the mortgage ceases upon the removal of the crop from the land upon which the crop grew, and therefore the lien of the mortgage does not follow and attach to the proceeds of the crop. The court in this case mentions two exceptions to the above rule. One is where there is an agree-

ment that the proceeds shall be applied to the mortgage indebtedness, and the other is where there is a tortious removal of the crops. It is clear that neither of these two exceptions has any application to the case at bar because it is not alleged that there was any agreement by either Sanders or the J. G. Boswell Company that the proceeds of the cotton crop should be paid to appellant nor is it anywhere alleged that the removal of the crop by Sanders was tortious. In the case of *Riddle* v. *Etling*, 84 Cal. App. 460, 463 [258 Pac. 162], the court said: ''While, depending upon the circumstances, the lien of the mortgage may have continued on the barley, the plaintiff had no lien upon the money in defendant's hands which was paid for the barley. If the plaintiff had authorized or ratified the sale made by the defendant, the result would be the same. The lien on the barley in that case would be extinguished and would not be transferred to the proceeds in the hands of the defendant. (*Maier* v. *Freeman*, 112 Cal. 8 [44 Pac. 357, 53 Am. St. Rep. 151].)''

█ Under appellant's allegations of fact in the instant case the lien of the alleged equitable mortgage did not and could not attach to the proceeds of the sale of the cotton in the hands of the J. G. Boswell Company, respondent herein. Appellant is seeking to impress his alleged lien only upon such proceeds. It follows that, as a matter of course, the complaint did not state a cause of action against respondent and the demurrer was properly sustained. █ Under the circumstances appellant is precluded from claiming on appeal that the lower court abused its discretion in sustaining the demurrer without leave to amend. In the case of *Thomson* v. *Mortgage Investment Co., supra,* the court in its opinion states (page 211): ''The record upon appeal does not affirmatively show a request for the filing of an amended complaint, therefore there cannot be imputed to the lower court an abuse of discretion in denying plaintiffs' leave to further amend. (Citing authorities.) The only question, therefore, for this court to determine is whether or not the demurrers of the respondents were for any reason properly sustained.''

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.